# United States District Court
## for the Northern District of Oklahoma

---

Case No. 25-cv-412-JDR-CDL

---

PATRICE GREEN, *as administratrix of* THE ESTATE OF MONTOYA
HOLMES, *deceased*,

*Plaintiff*,

*versus*

TURN KEY HEALTH CLINICS L.L.C.; VICTOR REGALADO *in his
official capacity*; ANGELIA LEMONS, L.P.N.; TYLER VONHOLT,
L.P.N.; CRYSTAL WHISENHUNT, L.P.N.,

*Defendants*.

---

## OPINION AND ORDER

---

Montoya Holmes was arrested and booked into the Tulsa County Jail,
where she suffered a fatal asthma attack. At the time of her death, she was
under the care of Defendants Turn Key Health Clinics, Angelia Lemons,
L.P.N., Tyler Vonholt, L.P.N., and Crystal Whisenhunt, L.P.N. Dkt. 2 at 2-
3.[1] Patrice Green, as administratrix of Ms. Holmes's estate, sued Ms. Lem-
ons, Mr. Vonholt, and Ms. Whisenhunt for deliberate indifference to Ms.
Holmes's medical needs under 42 U.S.C. § 1983. Ms. Lemons and Ms.
Whisenhunt move to dismiss the claims against them, arguing that Ms. Green
has not stated a claim against them upon which relief could be granted. Dkts.
30, 31. The Court grants the motions to dismiss. Ms. Green is granted leave
to re-file on or before December 5, 2025.

---

[1] All citations use CM/ECF pagination.

No. 25-cv-412

I

To withstand a motion to dismiss under Rule 12(b)(6), Ms. Green's complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts Ms. Green's well-pleaded allegations as true and then analyzes them to determine if Ms. Green's right to relief is not merely speculative. *Id.* at 555. "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In other words, the Court must determine whether the complaint provides a "reason to believe that [Ms. Green] has a reasonable likelihood of mustering factual support for [her] claims." *Ridge at Red Hawk, L.L.C. v. Schnieder*, 493 F.3d 1174, 1177 (10th Cir. 2007).

II

Ms. Holmes was booked into Tulsa County Jail on the morning of August 10, 2023. Dkt. 2 at 4. Ms. Lemons conducted a medical intake examination shortly thereafter and learned that Ms. Holmes was on medication for asthma and anxiety. *Id.* Ms. Holmes told Ms. Lemons that she had experienced wheezing and increased difficulty breathing over the previous week, and a headache and congestion that caused her to seek emergency treatment on August 9. *Id.* Ms. Holmes also informed Ms. Lemons that emergency room doctors had prescribed her a twelve-day course of prednisone to control her asthma symptoms. *Id.* Ms. Lemons entered most of this information into Turn Key's Medical Administration Record, but she did not enter the prednisone prescription into Turn Key's records. *Id.* at 5. Nor did she send a request to the hospital emergency room for Ms. Holmes's records.[2] *Id.*

---

[2] While this is noted in Ms. Green's complaint, neither she nor Ms. Lemons discuss it further. In any event, a failure to seek documents from another medical provider does not rise to the level of reckless behavior needed to sustain Ms. Green's deliberate indifference

*(footnote continues)*

No. 25-cv-412

Ultimately, Ms. Holmes never received her prescription medication, including those entered by Ms. Lemons. Dkt. 2 at 5-6.

Ms. Green alleges that Ms. Holmes spoke to Ms. Whisenhunt later that day to request Ipratropium Bromide, a bronchodilator used to treat asthma symptoms, so that she could maintain her regular medication schedule. *Id.* Ms. Whisenhunt did not provide Ms. Holmes with Ipratropium Bromide. *Id.* at 6.[3]

At 9:05 PM, Mr. Vonholt assessed Ms. Holmes for potential withdrawal from her anxiety medication. *Id.* Mr. Vonholt saw that Ms. Holmes was exhibiting various symptoms, including shortness of breath, severe coughing, and wheezing, but he did not provide her with the medication she requested. *Id.* Ms. Holmes was found at 3:30 PM the next day with blood in her airway and in cardiac arrest. *Id.* at 7. She was later pronounced dead. *Id.*

### III

A jail official's deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment's due process clause. *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). When determining whether a jail official has acted with deliberate indifference, a court must analyze both an "objective" and a "subjective component." *Id.* at 992. The objective component is met if the plaintiff's harm is "sufficiently serious." *Id.* Ms. Green alleges Ms. Holmes died because of the Defendants' deliberate indifference. Death is undoubtably sufficiently serious to meet this component. *Id.* Ms. Lemons does not dispute that Ms. Holmes's death satisfies the

---

claim. *See Jackson v. Bickham*, No. CV 22-1037-SDD-EWD, 2023 WL 3001117, at *3 (M.D. La. Mar. 16, 2023) (holding "the failure to request medical records does not amount to deliberate indifference"); *Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) (holding that a failure to request medical records was "negligence at most").

[3] Ms. Whisenhunt and Ms. Green disagree if the Court may consider intake screening forms attached as an exhibit to Ms. Whisenhunt's motion. Dkt. 31-1; Dkt. 39 at 6. The Court concurs with Ms. Green that the Rule 12(b)(6) analysis is cabined to the four corners of the complaint and will not consider Ms. Whisenhunt's extrinsic factual evidence.

No. 25-cv-412

objective component. Dkt. 30 at 7. Nor does Ms. Whisenhunt. Dkt. 31 at 6. Thus, the only question for the court is whether Ms. Green's allegations are sufficient to satisfy the subjective component.

The subjective component requires that the jail official knew of and disregarded an excessive risk to a detainee's health or safety, including when a jail official prevents a detainee from receiving treatment or "den[ies] [the detainee] access to medical personnel capable of evaluating the need for treatment." *Burke*, 935 F.3d at 992. To satisfy the subjective component, a plaintiff must establish that a jail official "ha[d] actual knowledge" that "a substantial risk of serious harm exists" and actually "dr[e]w the inference" that harm would result, but did nothing to mitigate the excessive risk. *Wilson v. Falk*, 877 F.3d 1204, 1210 (10th Cir. 2017).

To establish a jail official's knowledge of an excessive risk of medical harm, a plaintiff must allege facts that, if proven, would establish that the accused official was actually aware of symptoms associated with an imminent, "objectively intolerable risk of harm." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994); *see also Muse v. City of Philadelphia*, No. 05-CV-1554, 2006 WL 8459389, at *5 (E.D. Pa. July 31, 2006) (holding "an excessive risk is an objectively intolerable risk of harm."). For example, in *Mata v. Saiz* the Tenth Circuit distinguished between a nurse who turned away a patient exhibiting severe chest pains and other nurses who had not observed those same symptoms. 427 F.3d 745, 753-61. (10th Cir. 2005). The former was aware of facts that required a response; the latter did not have subjective knowledge that the inmate was at imminent risk of a heart attack. *Id.* Similarly in *Sealock v. Colorado*, the Tenth Circuit held that a guard would have disregarded an excessive risk of harm if he knew that an inmate was experiencing excessive chest pain and did not call an ambulance. 218 F.3d 1205, 1210-11 (10th Cir. 2000). Likewise, in *Paugh v. Uintah County*, the Tenth Circuit held that jail officials disregarded an excessive risk when they failed to abide by discharge instructions from a doctor when a detainee's observable symptoms constituted "an

4

No. 25-cv-412

obvious need for medical treatment." 47 F.4th 1139, 1157 (10th Cir. 2022). There, the discharge instructions and prescription put the officials on notice of a particular risk to a patient, which became an objectively intolerable risk once the patient's symptoms worsened. *Id.*

*Mata*, *Sealock*, and *Paugh* demonstrate that a jail official must have some indication of an immediate, objectively intolerable risk of harm to a detainee, such as a complaint of severe chest pains or other observable symptoms of a medical emergency, to be deliberately indifferent to that risk by inaction. A detainee's prescriptions may indicate a detainee faces an objectively intolerable risk if that prescription is denied, when that prescription is accompanied by additional indicia of risk. For example, a jail official who is aware that a detainee has a prescription for prophylactic medication to prevent dangerous seizures and was warned multiple times that without the medication, a dangerous seizure was probable, but who still chooses to deny the medication, is liable on a deliberate indifference theory if the detainee dies from a subsequent seizure. *Fisher v. Glanz*, No. 14-cv-678-TCK-PJC, 2016 WL 1175239, at *6 (N.D. Okla. Mar. 24, 2016).

But even if an official knows a detainee faces an excessive risk, "[a] medical professional's accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong" under the Fourteenth Amendment. *Burke*, 935 F.3d at 992 (quoting *Ramos v. Lamm*, 629 F.2d 559, 575 (10th Cir. 1980)). Deliberate indifference is something "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A "negligent failure to treat a serious medical condition properly . . . does not constitute deliberate indifference." *Burke*, 935 F.3d at 992. Further, a plaintiff must show that the official "acted with the level of recklessness [towards a detainee] to establish a claim of deliberate indifference." *Wishneski v. Dona Ana Cnty.*, No. CV 08-0348 MCA/WPL, 2010 WL 11623459, at *20 (D.N.M. May 18, 2010), *subsequently aff'd*, 498 F. App'x 854 (10th Cir. 2012).

No. 25-cv-412

IV

Ms. Lemons's alleged actions do not rise to the level of deliberate in-difference. Ms. Green argues that Ms. Lemons's failure to enter the predni-sone prescription into Turn Key's records constituted deliberate indifference to Ms. Holmes's condition. Dkt. 38 at 9-10. She alleges that Ms. Lemons's knowledge of Ms. Holmes's visit to the emergency room provided Ms. Lem-ons with subjective knowledge that Ms. Holmes was suffering from a serious medical condition that created an excessive risk to her health. *Id.* at 10. In support of this argument Ms. Green relies primarily on *Paugh*, 47 F.4th 1139. But *Paugh* involved a detainee who showed worsening symptoms in conjunc-tion with specific orders from a doctor to provide medication when those symptoms worsened. *Id.* at 1157. Ms. Green does not allege that Ms. Holmes was exhibiting symptoms of an asthma attack during the intake evaluation, that her symptoms were getting progressively worse, or that her prescription was accompanied by specific instructions indicating an excessive risk. Ms. Green has not pleaded facts showing that Ms. Holmes's condition was wors-ening or that she was presenting symptoms at the time Ms. Lemons per-formed her intake examination. Dkt. 2 at 4. Ms. Holmes told Ms. Lemons of symptoms she had shown during the previous week, but there is no indication that she showed any symptoms during the morning of August 10, 2023. *Id.*

Ms. Green also relies on *Fisher*, but that case is also distinguishable, as the defendant jail official went beyond simply failing to enter a single prescrip-tion. 2016 WL 1175239, at *6. Rather, despite knowing of the detainee's diag-noses of multiple mental health conditions, the official entered none of the detainee's various prescriptions and stated on an intake form that the de-tainee did not require any special management for mental health reasons. *Id.* The official also ignored repeated notifications from the detainee's family that the detainee needed anti-seizure medication to prevent life-threatening inju-ries. *Id.* at *7. These actions are far more egregious than the conduct alleged in this case.

No. 25-cv-412

Ms. Green argues that Ms. Lemons's knowledge of Ms. Holmes's emergency room visit from the day before and her recent history of asthma attacks put Ms. Lemons on notice that Ms. Holmes's condition was worsening. Dkt. 38 at 10-11. But Ms. Green has not pleaded any facts to permit this Court to make that inference. She does not allege that Ms. Holmes showed progressively worsening symptoms while detained or any symptoms when Ms. Lemons was performing her intake evaluation. Rather, the first mention Ms. Green makes of Ms. Holmes's symptoms was that they were present at 9:05 PM that evening, hours after the assessment. Dkt. 2 at 6.

There are no allegations that, if true, demonstrate that Ms. Lemons "acted with the level of recklessness required to establish a claim of deliberate indifference." *Wishneski*, 2010 WL 11623459, at *20. Based on Ms. Green's complaint, Ms. Lemons conducted a medical intake examination of Ms. Holmes, entered Ms. Holmes's medical history and prescriptions into Turn Key's records, and neglected to enter a single prescription Ms. Holmes had received for prednisone. Dkt. 2 at 4-6. This omission very well might have constituted negligence, but it does not rise to recklessness. *Burke*, 935 F.3d at 992. The facts alleged, taken as true, do not establish that Ms. Lemons acted with deliberate indifference towards Ms. Holmes. The Court grants Ms. Lemons's motion to dismiss.[4]

V

Ms. Green has likewise failed to allege facts that would permit a court to find that Ms. Whisenhunt acted with deliberate indifference towards an excessive risk Ms. Holmes faced. Ms. Green does not plead any facts indicating that Ms. Holmes had symptoms indicative of an asthma attack at that time. Although she asserts that "[i]t was obvious that Ms. Holmes needed

---

[4] Ms. Lemons and Ms. Whisenhunt both argue that even if they were deliberately indifferent, their indifference could not have caused or contributed to Ms. Holmes's asthma attack. The Court finds that neither nurse was deliberately indifferent and so need not reach those arguments.

No. 25-cv-412

immediate and emergent [sic] evaluation and treatment from a physician," she does not state when this immediate evaluation and treatment from a physician was actually necessary, what symptoms made the need evident, or who saw those symptoms other than Mr. Vonholt. Dkt. 2 at 45.

Ms. Green's complaint states that Ms. Holmes requested her Ipratropium Bromide so she could maintain her regular medication schedule. *Id.* at 5-6. Taking that as true, the Court cannot conclude that Ms. Holmes made the request because she was exhibiting symptoms that would have put Ms. Whisenhunt on notice that Ms. Holmes was facing an excessive risk. Ms. Green has not pleaded facts suggesting that Ms. Whisenhunt knew of symptoms, worsening conditions, or had any other indication that would put her on notice that Ms. Holmes faced an excessive risk of harm at any point prior to the 9:05 PM assessment. Without more, Ms. Green cannot make out a claim that Ms. Whisenhunt's conduct rose to "the level of recklessness required to establish a claim of deliberate indifference." *Wishneski*, 2010 WL 11623459, at *20. Accordingly, the Court grants Ms. Whisenhunt's motion to dismiss.

VI

For the reasons stated above, Ms. Lemons's and Ms. Whisenhunt's motions to dismiss [Dkts. 30, 31] are granted. The Court grants Ms. Green leave to amend her complaint to assert any additional facts she may have to support her claims against Ms. Lemons and Ms. Whisenhunt. If Ms. Green does not amend her complaint by December 5, 2025, this order will become final.

DATED this 14th day of November 2025.

JOHN D. RUSSELL
*United States District Judge*

8